IN THE UNITED STATES DISTRICT COURT OF
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DISCOUNT MEAT SHOP, LLC**, a Georgia Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES OF AMERICA**, <br><br> Defendant. | CASE NO. <br><br> **COMPLAINT** |

The Plaintiff, **DISCOUNT MEAT SHOP, LLC,** a Georgia Limited Liability Company, by and through its undersigned counsel, and hereby files this Complaint against the UNITED STATES OF AMERICA upon the grounds set forth herein, and in support thereof, states as follows:

### FACTUAL BACKGROUND

1. The Plaintiff, Discount Meat Shop, LLC (hereinafter referred to as "DMS") is a retail food store operating at 3540 Flat Shoals Road, Decatur, Georgia.

2. Located in Decatur, Georgia, DMS serves a community with a high percentage of households that participate in the Supplemental Nutrition Assistance Program ("SNAP", formerly the "Food Stamp Program").

3. Consequently, the store participates in SNAP as an authorized retailer.

4. A material portion of DMS revenue is derived from food sales to SNAP households through Electronic Benefit Transfer (EBT) transactions.

5.  On April 11, 2025, the United States Department of Agriculture (USDA), through the Food & Nutrition Service (FNS) (also referred to herein as "the Agency"), issued a Charge Letter to the Plaintiff wherein DMS was accused of fraudulent EBT transactions which had occurred more than three and a half years earlier. See **Exhibit A**.

6.  The allegations lacked specific detail, such as even a vague description of the clerk who allegedly conducted the fraudulent transactions.

7.  Instead, the Agency's description were as follow:

> *"On October 22, 2021, a clerk completed a transaction in which $99.98 in SNAP benefits were accepted in exchange for $50.00 in cash, as well as an additional transaction in which $39.62 in SNAP benefits were accepted for a couple of steaks.*
>
> *On November 5, 2021, a clerk completed a transaction in which $148.29 in SNAP benefits were accepted in exchange for $50.0 in cash and a couple of steaks."* **Exhibit A.**

8.  Though the allegations lacked transaction details, descriptions of the alleged clerk, and a narrative describing the transactions, the Defendant nevertheless threatened to punish the Plaintiff for such violations with permanent disqualification from the program, or with a civil money penalty:

> *"**Applicable Penalty/Penalties**
> **Disqualification:**           **Permanent**
>                                 Regulatory authority: 7 CFR 278.6(a) and 7 CFR 278.6(e)(1)(i)"* **Exhibit A.**

9.  The Plaintiff timely replied and disputed the allegations set out in the

Charge Letter.

10. Nevertheless, the Agency *issued and implemented* a punitive permanent disqualification of the Plaintiff from SNAP on July 25, 2025. See **Exhibit B**.

11. Though the administrative process continues before the Agency, the Administrative Review of the disqualification has neither a time limit, nor an assigned administrative review officer.

12. Furthermore, the Administrative Review is not conducted by an Administrative Law Judge, or any other person with either jurisdiction or expertise to address the Constitutional issues raised within this litigation. See generally 7 C.F.R. §279.

13. As such the administrative process can last for years and will never be able to address the claims herein, while the Plaintiff continues to incur damage as the result of the Agency's punitive actions against them.

14. The Plaintiff, having never been afforded so much as an evidentiary hearing before the implementation of the sanction, have been harmed by the Agency's conduct and seek this Court's redress as set forth below.

## JURISDICTION AND VENUE

15. The Plaintiff bring this action based upon the United States Department of Agriculture's punitive disqualification of the Plaintiff from the Supplemental

Nutrition Assistance Program.

16. This Court has subject matter jurisdiction over the matters raised by the Plaintiff in this case pursuant to 28 U.S.C. §1331 which gives this Court original jurisdiction over civil actions arising under the Constitution and the laws of the United States, for which this matter qualifies. This court also has jurisdiction under 5 U.S.C. §702 and §706 which state that the District Court shall have subject matter jurisdiction over matters involving claims of constitutional violations against a Government Agency, such as the USDA.

17. Venue is appropriate in this District pursuant to 28 U.S.C. §1391(b) as this Plaintiff's business is owned and operated in Decatur, DeKalb County, Georgia and because the facts giving rise to the circumstances herein occurred in the Northern District of Georgia.

### PARTIES

18. The Plaintiff, **DISCOUNT MEAT SHOP, LLC**, a Georgia Limited Liability Company, is referred to herein as "DMS" and "Plaintiff".

19. The Defendant, the UNITED STATES OF AMERICA, acting through its agency, the United States Department of Agriculture (hereinafter referred to as the "USDA" or "Department"), and its subservice, the Food and Nutrition Service (hereinafter referred to as "FNS").

## GENERAL ALLEGATIONS

20. The Supplemental Nutrition Assistance Program (SNAP) is a government program operated pursuant to Title 7 United States Code, Chapter 51, and codified more specifically as 7 U.S.C. §§2011-2036(c).

21. The general purpose of SNAP is to provide food benefits (formerly "food stamps") to program participants who meet the financial need requirements. SNAP participants are awarded benefits (money) issued on a state-by-state basis in varying amounts based on the needs of their household. These benefits are transmitted to, and utilized by the participant, through an Electronic Benefits Transfer (EBT) card, which conceptually functions similar to a debit card.

22. The benefits are to be used by the participant only for the purchase of food and other eligible items sold by approved SNAP retailers, such as DMS.

## SNAP STATUTORY STRUCTURE

23. SNAP retailer compliance actions do not function under the Administrative Practices Act in the way that many administrative procedures do.

24. Rather, Congress compiled a process by which the United States Department of Agriculture oversees SNAP retailers through a series of informal, non-evidentiary proceeding covered in 7 U.S.C. §2021 and 7 U.S.C. §2023.

25. When Congress initially crafted the process in the Food Stamp Act of 1964, the intent of the administrative portion of the enforcement process was to make

a series of informal findings before a court would make a final determination.

26.     Punitive actions were never intended to be implemented before a Court could intervene.

27.     Over the decades, Congress became more interested in preventing fraud and abuse of the Food Stamp Program by retailers and revised the statute to implement more harsh punishments for violations.

28.     In such a vein, Congress decided that it wanted to shorten the timeframe between the Agency's identification of alleged wrongdoing and the implementation of a punitive sanction against the offending retailer.

29.     To achieve such an objective, Congress added additional language to the enforcement review statute at 7 U.S.C. §2023(a)(18).  Specifically, Congress decided that the Agency should implement immediate punitive sanctions against retailers who have been accused of trafficking in SNAP benefits at the earliest opportunity, and well before either an evidentiary hearing or a final decision was rendered.

30.     To make matters more complicated, Congress then decided to absolve the Agency for any liability arising from a wrongful determination, meaning that a retailer could be wrongfully or errantly sanctioned by the Government, but that the wronged retailer could have no recourse from such wrongful action by the Government.  See 7 U.S.C. §2023(a)(18).

31. Lost in all of these changes made over the course of decades, was that the Agency became the legislative body, the prosecutor, the judge, the jury, and the executioner for accused SNAP retailers.

32. The Agency drafted the regulations detailing and defining what actions amount to SNAP violations (see 7 C.F.R. §271.2 and §278.6); the process by which SNAP retailers are accused of violations (7 C.F.R. §278.6); the standards by which accused SNAP retailers are to be adjudged (Agency Standard Operating Procedures 4-1 through 4-7); and the punitive sanctions inflicted upon the retailer (7 C.F.R. §278.6(e)).

33. But the Agency official tasked with interpreting and applying those regulations is also the same individual responsible for overseeing the prosecution of a retailer ***and*** is the very same Agency official who adjudicates the accused retailer's guilt. Thereafter, the same individual implements the punitive sanction (in the case of retailers accused of trafficking in SNAP benefits).

34. This relative omnipotence on the part of a single government official is wrought with conflict and bias that cannot be cured through an appeal (administrative or judicial) as the damage done can never be remedied (see 7 U.S.C. §2023(a)(18)).

35. As one might imagine, the conviction rate for SNAP retailers within this process well exceeds 90%, though that amount has fallen somewhat from the

100% conviction rate that existed a decade ago.

    36. The Plaintiff has fallen victim to this process:

        a. Section Chief Linda Peterson was responsible for overseeing the Plaintiff's prosecution for alleged violations of SNAP regulations.

        b. The Plaintiff responded to the Charge Letter, but the evidence and arguments proved to be inadequate to Section Chief Peterson, who issued a permanent disqualification of the Plaintiff that took effect immediately upon receipt of the disqualification.

        c. Thus Section Chief Peterson, whose job it was to build a case against the Plaintiff, was the same official who determined that the Agency's case was sufficient to issue a punitive disqualification of the Plaintiff, and further to implement such permanent disqualification.

### COUNT I: SEVENTH AMENDMENT VIOLATION

    37. The Plaintiff incorporates and restates the allegations contained within paragraphs 1-36 above as though fully set forth herein.

    38. The Seventh Amendment of the United States Constitution guarantees the right to a jury trial in cases brought upon common law, which includes claims of fraud brought by a regulatory agency seeking punitive sanctions. See *SEC vs. Jarkesy*, 14 S.Ct. 2117, 2130 (2024).

39. The allegations in this matter allege that the Plaintiff engaged in fraud vis a vis the exchange of SNAP benefits for cash.

40. As a result of those allegations, the Defendant issued a punitive sanction in the form of a permanent disqualification of the Plaintiff from SNAP.

41. The Plaintiff was not afforded an evidentiary hearing prior to the implementation of the sanction, pursuant to 7 U.S.C. §2023(a)(18), nor was the Plaintiff afforded a jury trial as is its Seventh Amendment right.

42. Further complicating this matter, the Plaintiff cannot recover damages for wrongful disqualifications in a judicial review action, resulting in irreparable harm automatically upon issuance of the disqualification. See 7 U.S. C. §2023(a)(18).

43. The Defendant's actions in this case, namely the implementation of a punitive sanction after a finding of fraud, violated the Seventh Amendment because the Plaintiff was not afforded an opportunity for a jury trial.

44. The Plaintiff has been deprived of their constitutional rights and suffered harm as a result thereof.

45. As such, the Defendant's unconstitutional conduct should be reversed, and the Plaintiff ought to be immediately reinstated to the Supplemental Nutrition Assistance Program.

46. It also follows that 7 U.S.C. §2023(a)(18), the statute under which the Agency has taken this action, is unconstitutional because it mandates the implementation of the punitive sanctions for trafficking without jury trial or even an evidentiary hearing.

**WHEREFORE**, the Plaintiff, **DISCOUNT MEAT SHOP, LLC**, a Georgia Limited Liability Company, respectfully requests this Court set aside the Defendant's permanent disqualification of the Plaintiff from participating in the SNAP program, as well as award the Plaintiff attorney's fees and costs incurred in this action.

## COUNT II: DUE PROCESS

47. The Plaintiff hereby aver those allegations contained above in paragraphs 1 through 36 as though more fully set forth herein.

48. The Due Process clause of the Fifth Amendment to the United States Constitution dictates that a person subject to government action be afforded a decision maker who is not biased against them. See *Del. Riverkeeper Network v. FERC*, 243 F.Supp. 3d 141, 162 (D. D.C. 2017) citing Tumey v. Ohio, 273 U.S. 510 (1927).

49. The structure of the Defendant's regulatory enforcement process creates bias against an accused retailer.

50. In pertinent part, the Agency official who is paid to find and prosecute

fraud within SNAP is the same official who sits in judgment of the retailer.

51. Furthermore, this same official determines the sanction against the retailer and then implements it in the case of trafficking matters.

52. In this case, Section Chief Peterson's primary responsibility is to develop cases against retailers for SNAP violations, and then charge the retailers with those violations.

53. Section Chief Marchee Briant took such action against the Plaintiff in this matter by issuing a Charge Letter against the Plaintiff accusing it of fraudulent SNAP transactions.

54. Thereafter, Section Chief Peterson determined that the violation(s) occurred, and chose the sanction (permanent disqualification) to be implemented.

55. Upon implementation of the sanction, the Plaintiff was immediately harmed as they lost their ability to process EBT transactions with SNAP households, thereby deprived of their property interests in the SNAP retailer licensure.

56. As such, the entire process is controlled by a single individual, who develops an opinion on the ultimate fact before the retailer is even charged with the violation.

57. That person, Section Chief Peterson in this matter, then sits in judgment with a pre-established opinion and undisclosed evidence, and far more frequently than not, finds the retailer at fault and sanctions them.

58. Such a process is rife with bias in violation of Due Process, and the resulting decision in this matter should be struck as a result thereof

**WHEREFORE**, the Plaintiff, **DISCOUNT MEAT SHOP, LLC**, a Georgia Limited Liability Company, respectfully requests this Honorable Court enter Judgment against the Defendant, find the Defendant's conduct unconstitutional, and strike the Agency's determination and sanction. Furthermore, the Plaintiff requests its attorney's fees and costs under EAJA.

This matter has been respectfully submitted to the Court by the undersigned attorneys and shall be served upon the Defendant in the manner prescribed by the Federal Rules of Civil Procedure, 7 C.F.R. §279 and 7 U.S.C. §2023, as will be evidenced by the proof of service filed with the Court hereafter.

Dated: July 30, 2025                                         Respectfully submitted,

*Paul S. Kish*
Paul S. Kish, Esq.
Georgia Bar No.: 424277
Kish Law LLC
229 Peachtree Street, N.E.
Suite 2505
Atlanta, Georgia 30303
Telephone: (404) 207-1338
Email: paul@kishlawllc.com

and

**METROPOLITAN LAW GROUP, PLLC**

*Andrew Z. Tapp*
ANDREW Z. TAPP, ESQ.

Florida Bar No.: 68002
*Pro Hac Vice*[1]
1971 W. Lumsden Road, #326
Brandon, Florida 33511-8820
Telephone: (813) 228-0658
Facsimile: (813) 330-3129
Andrew@Metropolitan.Law
LaJeana@Metropolitan.Law

**COUNSEL FOR PLAINTIFF**

---

[1] To Be Filed.